ELLA FOLEY, ADMINISTRATRIX OF THE ESTATE OF
EDWARD FOLEY, DECEASED, RESPONDENT, v. NEW
YORK, ONTARIO AND WESTERN RAILWAY COMPANY,
APPELLANT.

Submitted December 5, 1921—Decided March 6, 1922.

1. In an action under the Federal Employers' Liability act to re-
cover damages in a death case where the negligence charged is
the failure of the carrier to exercise ordinary care in keeping
its roadbed reasonably safe by omitting to take precautions to
prevent stones from rolling down a hillside upon its roadbed.
testimony that at a point some eight hundred feet distant from
the place of the accident, where the bank had been dug out,
and made almost perpendicular, stones undermined by the ex-
cavation had fallen, is not sufficient evidence to apprise the de-
fendant of danger from rolling stones at the place of the acci-
dent, where the hillside and surrounding conditions were dis-
similar to those at the place where the stones had fallen.

2. A civil engineer called as an expert witness testified that upon
the hillside adjacent to where a stone had rolled down upon the
roadbed of a railroad he had observed vibrations produced by
switching movements which in his opinion would eventually dis-
lodge stones but not large stones embedded in the soil. The
stone which had caused the accident was a large stone which
had been embedded in the soil. *Held*, that the testimony of the
witness was not evidence of defendant's negligence.

On appeal from the Hudson County Circuit Court.

For the appellant, *Wall, Haight, Carey & Hurlpence.*

For the respondent, *Alexander Simpson.*

The opinion of the court was delivered by

KATZENBACH, J.    This is an appeal from a judgment
rendered in the Hudson County Circuit Court in favor of
the plaintiff below. The action was instituted under the
Federal Employers' Liability act to recover damages for the
death of Edward Foley, a brakeman in the employ of the
New York, Ontario and Western Railway Company, the de-
fendant below. The place of the accident was in the Wee-

hawken yards of the West Shore Railroad Company. The defendant operated under lease in these yards two tracks extending in a northerly and southerly direction from certain storage tracks to its coal docks. The westerly of the two tracks was at the base of a hill. It was used for transfering loaded coal cars from the storage tracks to the docks. On the afternoon of June 24th, 1920, a draft of nine loaded coal cars was being pushed by an engine over the westerly track towards the docks at a speed of approximately ten miles an hour. Foley was standing on the leading car as a lookout. The foremost journal on the westerly side of the car on which Foley was standing struck a boulder eighteen or twenty inches in diameter, which had come from the adjacent hillside and lodged just outside of the westerly rail of the track. The car was derailed and Foley was thrown to the ground and killed.

The course of the boulder which caused the accident was traceable by the marks on the ground. It had been lodged in the rear of a larger boulder. This location was evidenced by a depression in the ground which conformed to the shape of the stone. The depression was on level ground and was from two to six inches in depth. After the accident the depression was found to be moist and the surrounding land dry. One face of the stone was discolored by earth stains. Its location before the accident was about forty feet from the track and fifteen feet above the rail.

In an action under the Federal Employers' Liability act recovery can be had from the carrier only for an injury or death resulting in whole or in part from the negligence of any of the officers, agents or employes of the carrier, or by reason of any defect or insufficiency due to the carrier's negligence in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment. Negligence is the gist of the action and negligence of the carrier must be proved to recover damages. The plaintiff or decedent must also have been engaged at the time of the accident in interstate commerce. The negligence set forth in the complaint is that the defendant failed in the discharge of its

duty to the plaintiff's intestate to use ordinary care to keep
its roadbed in a reasonably safe condition, in that it omitted
to erect along the westerly side of its right of way a retaining
wall to prevent boulders from rolling upon its roadbed and
track or omitted to remove from the hillside the boulders
so as to have prevented them from reaching the track and
roadbed.

The burden of proving negligence rested upon the plaintiff.
At the conclusion of the plaintiff's case a motion to nonsuit
was made for the defendant and overruled. At the termina-
tion of the evidence a motion to direct a verdict for the de-
fendant was made and overruled. Both motions were based
in part on lack of proof of negligence. To these rulings ex-
ceptions were taken, and these exceptions are now urged as
grounds for the reversal of the judgment rendered.

The plaintiff sought to prove that it was the duty of the
defendant to anticipate that stones would roll down the hill-
side on the track and to guard against such an accident as
did occur by proving that prior to the accident other stones
had rolled down the hillside. If the plaintiff had offered tes-
timony that prior to the accident, and at a place where the
topography of the land was essentially similar to the point
where the boulder causing the accident had rolled down the
hillside other stones or boulders had descended upon the road-
bed, a jury question would have been presented. *Ferguson
v. Central Railroad Co.*, 74 *N. J. L.* 691. The testimony
which the plaintiff offered, however, was to the effect that at a
point some eight hundred feet from where the accident oc-
curred, and where the bank had been dug into and made al-
most perpendicular by the excavation, stones undermined by
the excavation, had fallen in the vicinity of or upon a yard-
master's shanty. These stones never reached the track or fell
in a position to cause an accident. The place where these
stones rolled down was too remote from the scene of the acci-
dent and the conditions at the two points too dissimilar to
apprise the defendant of any likelihood of danger from roll-
ing stones at the place where the accident occurred.

The plaintiff also sought to establish negligence by the testimony of Guy W. Culgin, a civil engineer, as to the probability of stones rolling from the hillside to and upon the track through vibrations produced by switching movements in the yard. This witness made an observation some seven months after the occurrence of the accident, occupying an hour and a quarter. He noticed a vibration from the passing of one train. In his opinion, the vibration he observed would eventually dislodge stones, but this would not apply to embedded stones or stones which would have to be lifted even to a slight extent in order to get them out of their position. He further stated that the larger stones were embedded in the soil. He did not state the length of time which would be required to dislodge stones by the vibration he noticed. He testified that he observed none dislodged during his investigation. This testimony does not establish negligence. The only stones which could cause an accident of the character of the one which did occur were the large stones, and these, according to the testimony of Mr. Culgin, were so embedded as not to be susceptible to the vibrations to which he testified.

The plaintiff's case, as we view it, is lacking in any proof that from the conditions as they existed at the place of the accident an ordinarily prudent person could have anticipated the happening of this accident. The trial court should have granted the motion for a nonsuit on the failure of proof of negligence. The evidence offered by the defendant confirms and strengthens this opinion. It was proved that this track was laid in 1895. To the time of the accident it had been in continual use for twenty-five years. During this period no stones had ever been known to roll down from the hill in the vicinity of the place where the accident occurred or where the topography of the land was similar to the land at the place of the accident. There was no evidence that by human agency stones had been rolled from the hillside to the track. The photographs offered in evidence show that the hill was not abrupt and did not overhang the track. There seems to be nothing at the location where the acci-

dent occurred which would cause an ordinarily prudent person to take the precautions the plaintiff urges should have been taken to protect the track from obstructions coming from the hillside. Liability does not flow from every accident. Accidents may occur grievous in their consequences for which no one is legally or morally responsible.

In deciding, as we do, that there was no evidence of the negligence of the defendant which warranted the submission of the case to the jury, and that the trial court erred in denying both the defendant's motions to nonsuit and to direct a verdict for the defendant, it becomes unnecessary to consider the other grounds of appeal urged by the appellant.

The judgment is reversed and a *venire de novo* awarded.

MINTURN, J. (dissenting). The difficulty in acceding to a reversal of this judgment inheres in the conspicuous fact that the legal proposition advanced to sustain the reversal runs counter to the recognized principles of law, which apply to all other cases of general tort-feasance, where an accident occurs, and a reasonable explanation, satisfactory to a jury, accounting for the occurrence of the accident, is *ipso facto* imposed upon the tort-feasor, as a basis for his exculpation. The case presents the simple fact of a brakeman, engaged in switching cars, propelled by an engine, upon a railroad track, which abutted the Bergen hillside, commonly known as "The Palisades." As a result of this switching process a car was derailed by colliding with a boulder, which had rolled down the Palisades, and lodged upon the track, thus causing the accident.

The case went to the jury at the Circuit, and a verdict for the plaintiff resulted. The merits of the case, presenting the question as to the probability of this accident occurring without the interference of an outside agency, and whether the risk of danger was so obvious from the contiguity of the tracks to the hillside as to impose a legal duty of any kind upon the defendant, and the plaintiff, to guard against possible danger, are argued in the brief of defendant as though

the questions of fact thus presented are here on rule to show cause.

These contentions we conceive, under the circumstances, presented jury questions, and are not for us to determine here upon the refusal of a motion to nonsuit or the refusal to direct a verdict. *Clark* v. *Public Service Electric Co.*, 86 *N. J. L.* 144; *Willever* v. *Delaware, Lackawanna and Western Railroad Co.*, 89 *Id.* 697; *Grybowski* v. *Erie Railroad*, *Id.* 361.

Plaintiff having proved the accident, the duty was cast upon the defendant of explaining to the jury the circumstances attending its occurrence, and that the defendant is relieved from liability by reason of the fact that it performed its duty of due care, under the possibility of apparent or possible danger presented by the situation, and the issue thus presented, obviously, became a jury question.

The rule is thus stated by a distinguished writer: "If something unusual happens with respect to defendant's property, or something over which he has the control, which injures the plaintiff, and the natural inference on the evidence is that the unusual occurrence is owing to the defendant's act [or want of action], the occurrence being unusual, it is said, in the absence of explanation, to speak for itself that such act was negligent." *Sm. L. Neg.* 165, and cases.

The basis of the doctrine of negligence is furnished by the inquiry, long ago settled by the Courts of Westminster Hall, whether in any given exigency requiring the performance of reasonable care the defendant, conscious of the possibility of danger, exercised reasonable due foresight for harm, and the answer to such an inquiry is for the jury. *Vaughan* v. *Menlove*, 3 *Bing. N. C.* 468; 32 *Eccl.* 208; *Hill* v. *Winsor*, 118 *Mass.* 251.

That test of liability has been applied in cases of this character both in this court and in the Supreme Court. *Griffin* v. *Director General*, 95 *N. J. L.* 490; *Beck* v. *Director General*, *Id.* 158; *Mackenzie* v. *Oakley*, 94 *Id.* 66.

In the latter case the Supreme Court declared as to a situation substantially duplicated here: "The situation presented

is within the rule applicable to an accident which suddenly and for no apparent cause happens; and yet, from the very fact of its occurrence an abnormal situation is presented, which bespeaks negligence in operation, under the rule of *res ipsa loquitur,* which calls upon the defendant for an explanation to exculpate herself from the legal inference or presumption of negligence arising thereform. . The situation thus presented evolved an issue of fact for the jury as to whether the defendant's explanation was sufficiently exculpatory."

In this instance the contiguity of the tracks to the base of the almost perpendicular Palisades, whose geological history we may judicially notice as a mass of basaltic rock of volcanic or glacial origin, about which quarry explosions of varying intensity frequently occur, which may result· in detaching from their beds rock formations, but loosely held; not to speak of the added vibrations of numerous trains passing to and from the railroad yards, presented a situation of at least incipient danger, which required at least due exercise of reasonable care in observation and track walking to guard against; not only for the protection of the operatives of the railroad, but also for the protection of the traveling public, using the railroad as a highway. Whether that degree of care was exercised, which under the circumstances was reasonably requisite, and which is standardized by the foresight of the reasonably prudent man, became a jury question and was properly submitted to the jury. *Monroe* v. *Pennsylvania Railroad,* 85 *N. J. L.* 688.

These natural possibilities of inherent structural danger were emphasized in this case by the specific testimony that loose stones had on other occasions rolled down the hillside, after rain or a frost, and approached the roadbed of the defendant, without, in the language of one witness, going "quite as far as the track." A jury in such a situation might well consider, and it was their peculiar province to consider facts of that character as sufficiently indicative to the prudent man .of the probabilities of the existence of a lurking danger which, without the exercise of due care and reasonable fore-

sight, inhered in the situation; and in the disposition of that question also was comprehended the collateral question of assumption of risk, in so far as that question may be considered under the federal act.

The verdict, therefore, was within the province of the jury to render and should be affirmed.

*For affirmance*—SWAYZE, MINTURN, KALISCH, BLACK, WILLIAMS, ACKERSON, VAN BUSKIRK, JJ. 7.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, BERGEN, KATZENBACH, WHITE, GARDNER, JJ. 8.